UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
UNITED STATES OF AMERICA

    -against-                            Dkt #:  1:16-CR-00316

FRANCISCO QUINONES BETANCURT,

                    Defendant.
-------------------------------------------------------------------x

# SENTENCING MEMORANDUM

BRYAN KONOSKI
Treyvus & Konoski, P.C.
*Attorney(s) for the Defendant*
305 Broadway, 14th Floor
New York, NY 10007
(212) 897-5832
Fax: (718) 668-1094
Email: bkonoski@aol.com

# I.

## INTRODUCTION

Defendant, Francisco Quinones Betancurt, will be sentenced upon his plea of guilty to Count One of the Indictment, which charged the defendant with Conspiracy to Distribute and Possess with Intent to Distribute Cocaine While Onboard a Vessel Subject to the Jurisdiction of the United States in violation of 46 U.S.C. § 70503, 70506(b), and 7054(b)(1); 18 U.S.C. § 3238, and 21 U.S.C. § 960(b)(3).

I offer this sentencing memorandum to assist the Court in arriving at a sentence "sufficient but not greater than necessary" to satisfy the goals of sentencing as codified at 18 U.S.C. § 3553(a)(2).

# II.

## SENTENCING GUIDELINES CALCULATION

The Probation Office arrived at an adjusted offense level 29, which is the Stipulated Guidelines Range set forth in Mr. Betancurt's plea agreement with the Government. Moreover, the Probation Office arrived at a Criminal History Category of I. Thus, per the Sentencing Guidelines, the range for imprisonment is 87 to 108 months. The Department of Probation has recommended a sentence of 87 months' incarceration.

The Defendant has no objection to the sentencing guidelines calculation arrived at by the Probation Office and agrees with the calculation.  However, Mr. Betancurt should receive the benefit of a sentence outside the Stipulated Guidelines Range based on factors to be considered in imposing a sentence pursuant to 18 U.S.C. § 3553(a).

Therefore, regardless of the Government's calculation, and even if the Court agrees with Probation's calculation, I still request that the Court depart from the sentencing guidelines and

sentence the defendant to <u>1 year and 1 day incarceration</u> because such a sentence is "sufficient but not greater than necessary" to satisfy§ 3553(a).

## III.

## AN OVERVIEW OF SENTENCING POST-BOOKER

Since 2005, district courts have had wide discretion to impose non-Guidelines sentences, as long as they are reasonable. *See United States v. Booker*, 543 U.S. 220, 226-227 (2005) (eliminating requirement that district courts impose Guidelines-range sentences). The Guidelines are "effectively advisory", *see Gall v. United States*, 552 U.S. 38, 62 (2007), and are only "the starting point and the initial benchmark." *Id.*, at 49.

Moreover, "the Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable." *Nelson v. United States*, 129 S.Ct. 890, 892 (2009).

In an informative (not controlling) decision, the Second Circuit re-examined how courts conduct and review sentences, not only post-Booker, but specifically post-*Gall/ Kimbrough. See United States v. Cavera*, 550 F.3d 180, 184 (2d Cir. 2008); c.f. *Kimbrough v. United States*, 552 U.S. 85 (2007).

The *Cavera* court's *en banc* opinion explains that district courts are no longer to presume that a Guidelines range sentence is reasonable. *See Cavera*, 550 F.3d at 184. The district court "must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense." *Id.*

Similarly, the Third Circuit has found that *Gall* and *Kimbrough* have expanded the sentencing court's authority to stray from the Guidelines, empowering district courts with "'wide latitude in making individualized sentencing determinations.'" *United States v. Marrero*, 313 Fed.Appx. 557, 558 (3rd Cir. 2009); citing *United States v. Rodriguez*, 527 F.3d 221, 225 (1st Cir. 2008).

In *United States v. Tomko*, 562 F.3d 558 (3rd Cir. 2009), the Third Circuit noted that post-*Booker*, district courts must make an "'individualized assessment based on the facts presented." *Tomko*, 562 F.3d at 567; quoting *Gall*, 552 U.S.at 597.

The Third Circuit has further explained that the district court must consider all of the factors in 18 U.S.C. §3553(a) to determine the appropriate sentence, "which may vary from the sentencing range called for by the Guidelines." *United States v. Levinson*, 543 F .3d 190, 194-95 3rd Cir. 2008). Ultimately, the touchstone of "reasonableness" reflects "rational and meaningful consideration" of §3553(a) factors. *United States v. Grier*, 475 F.3d 556, 571 (3rd Cir. 2007).

In *Tomko*, the court concluded:

> In order for the Guidelines regime to be truly advisory, a district court must be potentially able, when the proper situation arises, to sentence a defendant outside the Guidelines range but within the statutory range. Any other conclusion would alter the statutory sentencing scheme enacted by Congress and interpreted by *Booker*.

*Tomko*, 562 F.3d at 574-75.

Therefore, although the Guidelines remain a factor, district courts must consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

> (2) the need for the sentence imposed to: (A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

> (3) the kinds of sentences available;

> (4) the kinds of sentences and the sentencing range established for: (A) the applicable category of offense committed by

> the applicable category of defendant as set forth in the guidelines;

(5) [ ... ];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

*See* 18 US. C.§ 3553(a).

Ultimately, of course, the overarching goal of sentencing is to ensure that a sentence is "sufficient, but not greater than necessary" to satisfy the purposes of sentencing under § 3553(a)(2).

**A.**

**A SENTENCE OF ONE YEAR AND ONE DAY IS APPROPRIATE DUE TO THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT. (18 U.S.C. § 3553(a)(l)).**

Congress has directed sentencing courts to consider "the history and characteristics" of the defendant when imposing sentence.  18 U.S.C. § 3553(a)(l).

There is certainly no doubt that when someone commits a crime in our society, there are repercussions.  Nothing in this memorandum to the court should be interpreted as undermining the seriousness of the offenses that Mr. Betancurt admitted to committing.  However, based on my communications with Mr. Betancurt's wife, my review of the attached photographs, my review of the discovery in this case, and the content of the PSR, I believe that leniency by this Honorable Court is justified in this case.

Mr. Betancurt's life has been fraught with hardship.  He and his family live in extreme poverty and squalor.  The proof and evidence in this case demonstrates that Mr. Betancurt's actions were not driven solely by greed or a desire to inflict harm on society.  Mr. Betancurt's actions

appear to have been primarily motivated by a desire to ensure that his family's basic necessities were taken care of, including simply making sure his family had food on the table.

Mr. Betancurt's life story is one of hardship that most people living in the United States cannot truly imagine.

Mr. Betancurt was born on May 30, 1975, in Guapi, Cauca, Columbia, and is currently 41 years old.  He is the second of five children.  (PSR ¶ 36).  Since birth, life was difficult for Mr. Betancurt.  He lived under extremely poor economic conditions.  The family's home had no television, no electricity, and they used candles for light.  The family did not have adequate food or clothing.  Mr. Betancurt's father never held a job and his mother sold pastries and washed other people's clothing to make whatever money she could to try and support the family.   However, things never got better financially and the children had to pitch in.  As a result, Mr. Betancurt had to begin working at a very young age.  At the age of 7, Mr. Betancurt began working with his grandfather and the two of them would go fishing together to help feed the family. (PSR ¶ 38).

Initially, Mr. Betancurt tried to remain in school while he worked with his grandfather.  But, tragedy struck.

Mr. Betancurt recounts a very emotional and traumatic incident that occurred when he was just 9 years old.  At 9 years old he was on the "high seas" with his grandfather fishing.  While on the ocean a storm set in and the water became very rough and choppy.  The small fishing boat that the two were traveling in flipped over and threw both Mr. Betancurt and his grandfather into the sea.  Luckily for Mr. Betancurt, at the time the two were thrown into the water some debris and rubbish was floating by, including a tree trunk.  Mr. Betancurt's grandfather was able to grab hold of the tree trunk and tie Mr. Betancurt's small 9 year old body to the tree to help him keep afloat.  He remained afloat tied to the tree trunk out on the "high seas" for 36 hours before rescue boats

finally found him. When he was found, he was in extremely poor health. Based on the description provided by Mr. Betancurt, it seems as if he was near-death. After his rescue, he spent the next 4 months in a hospital. He recalls that the effect of the salt water on his skin was traumatic; his skin was dehydrated and peeling off his body. Although Mr. Betancurt survived, his grandfather was not so fortunate. His grandfather drowned and his body was never found. (PSR ¶ 39).

Shortly after the drowning of Mr. Betancurt's grandfather, and after his own recovery in the hospital, Mr. Betancurt stopped attending school. He obtained a 4th grade education. But, he stopped attending school because he needed to find employment on a more regular basis since his grandfather had passed away and was no longer available to help the family financially. (PSR ¶ 49).

Mr. Betancurt lived with his family until age 15. At that time he left the city of Guapi and moved to Buenaventura, which was a coastal seaport city with more employment opportunities. He began working for a fishing company called Bahia Cupia. He worked for this company for the next 15 years before the company went bankrupt. When the company went bankrupt, all of the employees, including Mr. Betancurt, were suddenly asked to leave the job. There was no severance pay of any kind. Additionally, Mr. Betancurt was owed money for work he performed when he left. He never received that pay. (PSR ¶ 40). While working for Bahia Cupia, this was the most "stable" his finances ever were. He earned approximately $300-$400 USD for every 45 days while working for Bahia Cupia.[1] This breaks down to earnings of approximately $6.67 to $8.90 per day. (PSR ¶ 40 and 43). Even in his most "stable" financial condition, life was still very difficult.

---

[1] Mr. Betancurt reports that he earned $1,000,000 to $1,500,000 pesos for 45 days working with Bahia Cupia. Mr. Betancurt also reports that the exchange rate is approximately $1USD for every $3,000 pesos. That would mean that the rate of pay with Bahia Cupia was approximately $300 to $400 every 45 days.

After Mr. Betancurt was terminated from his job from Bahia Cupia he worked odd jobs intermittently. Whenever he was able to find a job, he would earn approximately $100 to $140[2] USD for 45 days of work on the sea. After being terminated from Bahia Cupia, his earnings averaged approximately $2 to $3 USD per day of hard physical work fishing on the ocean. However, Mr. Betancurt reports that he did not always have work. In fact, it was not uncommon to sometimes have no work for 2 to 3 months at a time.

Mr. Betancurt has a family. He is married to Gladys Portocarrero. They met when Mr. Betancurt was 16 years old. Ms. Portocarrero is now 48 years old. Their relationship produced 6 children: Jerlin (age 20), Diana (age 19), Jason (age 17), Lery (age 11), Karol (age 8), and Brainer (age 5). The entire family lives in Columbia.

Mr. Betancurt is approximately 2,500 miles away from home and has not seen his family since he was arrested in this case. Mr. Betancurt's arrest has been stressful for his family. Mr. Betancurt reports that his wife suffers from "heart problems" and she is under a lot of stress since his arrest. (PSR ¶ 42). His family would like to see Mr. Betancurt, but they simply do not have the money to travel to the United States to visit with him.

Mr. Betancurt is a very loyal and supportive father and husband. He has been in a loyal relationship with his wife for the last 25 years. Additionally, Mr. Betancurt's wife and family are very supportive. They have been in contact with his attorney, Bryan Konoski, via "What's App", which is a cell phone app that allows for international communication by text message. Ms. Portocarrero provided defense counsel with various photographs, which are attached to this sentencing memorandum. The photographs include the following (See Exhibit A):

---

[2] Approximately $300,00 in pesos.

- Page 1:

  - <u>Top Photo</u>:  Depicts roof of the family's residence, near the kitchen.  The roof appears to be tin.  The walls are cinder block.  There is a hanging light, which appears to be the only lighting for the kitchen area.

  - <u>Bottom Photo</u>:  Depicts Mr. Bentancurt's wife and his two youngest children.

- Page 2:

  - <u>Top Photo</u>:  Depicts Mr. Bentancurt's wife and one of his children.

  - <u>Bottom Photo</u>:  Depicts a hallway in the family's residence.  The ceiling appears to be made of tin and supported by wooden logs.  The walls on the right hand side are cinder block.  And on the left hand side of the photo there is wooden walls that are roughly crafted.  Mr. Bentancurt's wife appears at the end of the hallway.

- Page 3:

  - The photos on this page depict the family's living and sleeping arrangements.  The family sleeps on cloth mats that are rolled out on a concrete floor.

- Page 4:

  - <u>Top Photo</u>:  This is the same top photo that appears on Page 1.

  - <u>Bottom Photo</u>:  Depicts the kitchen.  It is obviously very small with not a lot of amenities.

- Page 5:

  - <u>Top Photo</u>:  Depicts a hallway in the family's residence.  Similar picture to the top photo on Page 2.

  - <u>Bottom Photo</u>:  Depicts the kitchen.

- Page 6:

  - <u>Top Photo</u>:  Depicts a hallway in the family's residence, from a different angle.  Here, you can see that the wooden wall on the left side also has sheets hanging from it to help create privacy.

  - <u>Bottom Photo</u>:  Exterior grounds of the home.

- Page 7:
  - o <u>Top Photo</u>:  Depicts the exterior grounds of the home, and the surrounding neighborhood.  On the uppoer right and left hand side of the photo there are other residences.  These residences appear very dilapidated and run down. This demonstrates the wide-spread poverty in the neighborhood that Mr. Betancurt's family resides.

  - o <u>Bottom Photo</u>:  Depicts Mr. Betancurt and a family member.

The aforementioned photographs demonstrate that Mr. Betancurt and his family live in extreme poverty.  However, despite these extreme living conditions, Mr. Betancurt has remained a loyal, honest, hardworking, and caring family man who has always tried to do the best he can for his family.  Mr. Betancurt's family loves and remains very supportive of him.  His family has expressed their love for Mr. Betancurt and they ask this court for leniency.

As a general matter, a defendant's family circumstances are justified for granting a below-Guidelines sentence.  *See U.S. v. Johnson,* 964 F.2d 124, 128 (2d Cir. 1992).  The depth and breadth of the love and support that Mr. Betancurt has with his family, including his wife and children, as demonstrated by the lengthy 25-year relationship he has had with his wife and the fact that his wife has been in touch with defense counsel, demonstrate that a below-Guidelines sentence is appropriate in this case.

Mr. Betancurt's role in his family's lives, and the impact on their lives if Mr. Betancurt is sentenced to a prison sentence, is relevant to his sentence in this case pursuant to USSG § 5Hl.6. Although the policy statement of USSG § 5H1.6 generally discourages departures based on family ties, they are still a relevant area of inquiry and have been found to be persuasive for a departure in other cases. For instance, in *United States v. Owens*, 145 F .3d 923 (7th Cir. 1998), the Court found that a departure from 169 to 120 months under § 5Hl.6 was justified for defendant who maintained good relationship with his children and court believed his active role raising and

supporting his family was atypical for crack dealer. In *United States v. Crawford*, 2007 WL 2436746 (E.D. Wis. Aug. 22, 2007), the district court granted a variance from the Guidelines due to the defendant's family situation with five children and the impact incarceration would have on the children. In *Crawford*, the court sentenced the defendant to time served and placed her on four years' probation.

Based upon the guidance provided for in *United States v. Owens* and *United States v. Crawford*, the Court in this case is free to consider Mr. Betancurt's family ties and the impact that his incarceration will have on his wife and children as a basis for a variance.

Overall, the history and characteristics of Mr. Betancurt demonstrates that a variance is warranted in this case. On behalf of Mr. Betancurt, the defense is asking for the Court to sentence Mr. Betancurt to 1 year and 1 day incarceration.

**B.**

**A SENTENCE OF ONE YEAR AND ONE DAY IS APPROPRIATE DUE TO THE NATURE AND CIRCUMSTANCES OF THE OFFENSE OF THE DEFENDANT. (18 U.S.C. § 3553(a)(l)).**

Amongst the most important sentencing factors for a court to consider are the "nature and circumstances of the offense." 18 U.S.C. § 3553(a)(l). As an initial matter, it is important to note that the defendant is not downplaying the seriousness of the offense of conviction in this case. Mr. Betancurt plead guilty to Count One of the Indictment, which charged the defendant with Conspiracy to Distribute and Possess with Intent to Distribute Cocaine While Onboard a Vessel Subject to the Jurisdiction of the United States in violation of 46 U.S.C. § 70503, 70506(b), and 7054(b)(1); 18 U.S.C. § 3238, and 21 U.S.C. § 960(b)(3). However, the lack of a mandatory minimum sentence reflects the congressional judgment that there are circumstances where someone convicted of an offense should be given leniency.

The Government contends that all the defendants in this case were stopped by the United States Coast Guard approximately 275 nautical miles off the cost of the border between Guatemala and Mexico. Onboard the boat there was approximately 22 packages containing approximately 660 kilograms of cocaine.

Mr. Betancurt reports that he became embroiled in this situation when he was trying to find work in the fishing industry. Often, he would wait in a location where employers could find him or other people who needed work, which is what he did on the day he was "hired" to assist with the transportation of narcotics in this case. While waiting to be solicited for work in the fishing industry, he was approached by someone who told him that there was work for him. He was promised money in exchange for his assistance, which is how he received the offer which led to his conduct in the underlying case. Essentially, the people that convinced Mr. Betancurt to become involved in this conduct were praying on the most impoverished citizens of Columbia who were waiting patiently for an offer of temporary employment.

Upon information and belief, the defendant was to earn not more than $2,000 USD for his assistance on the boat. Moreover, upon information and belief, the people controlling the operation were all heavily armed "guerillas" who did not allow Mr. Betancurt to view or handle the cargo.

Mr. Betancurt was not a leader or manager of the crime that was committed. In fact, he received an adjustment for a "mitigating role" in the offense. (PSR ¶ 20). It can certainly be said that Mr. Betancurt was also a victim of the true perpetrators of the crime who prayed on the most downtrodden members of their own society.

## C.

## A SENTENCE OF ONE YEAR AND ONE DAY IS APPROPRIATE (18 U.S.C. § 3553(a)(2)).

In this case, the Court must also consider the need for the sentence imposed. 18 U.S.C. § 3553(a)(2). Based on the totality of the circumstances present in this case, coupled with an analysis of each of the pertinent factors set forth in 18 U.S.C. § 3553(a)(2), which are discussed below, the Court should consider that justice is served with a sentence of 1 year and 1 day incarceration.

### (A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

In this case, a sentence of 1 year and 1 day incarceration is sufficient to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. Mr. Betancurt admitted to his criminal conduct. He has no past criminal history, did not engage in any crimes of violence, and plead guilty to an offense that does not have a mandatory minimum sentence. The fact that he was offered a reduced plea, and received an adjustment for a "mitigating role", demonstrates that Mr. Betancurt's overall conduct warrants a lenient sentence in this case. Mr. Betancurt's role in the instance offense was narrow and finite. Although he participated in the drug trafficking trade in the instant offense, he is not a significant drug trafficker and his role was minimal. While dissuading individuals from agreeing to participate in the transport of drugs is an important factor to consider, a below guideline sentence adequately deters Mr. Betancurt and others from committing the instant offense.

Also important for the Court's consideration is sentencing in other similar cases, including:

- United States v. Prado, 15-CR-455. In this case, Judge Jed Rakoff sentenced all 3 defendants to **24 months'** incarceration.

- United States v. Franco, 15-CR-731. In this case, Judge Kimba Wood sentenced both of the defendants to **24 months'** incarceration.

- <u>United States v. Riascos, 16-CR-277</u>. In this case, Judge George Daniels sentenced one defendant (Riascos) to 16 months' incarceration, and sentenced the other defendant (Solis) to **18 months'** incarceration.

In this case, on behalf of Mr. Betancurt, the defense asserts that 1 year and 1 day incarceration is consistent with the sentencing for Riascos and Solis. Additionally, it is important to note that Mr. Betancurt has a mitigating role and was a minor participant in this case. Therefore, a sentence consistent with Riascos and Solis is appropriate.

### (B) To afford adequate deterrence to criminal conduct.

In this case, a sentence of 1 year and 1 day incarceration would afford adequate deterrence to criminal conduct. Mr. Betancurt's arrest and prosecution in this case will provide adequate deterrence to future criminal conduct. First, at the time of his arrest he was brought into custody by the United States Coast Guard. The Coast Guard kept Mr. Betancurt in custody upon their vessel for at least 4 weeks before bringing him into the United States for prosecution. Since arriving in the United States he has been away from his family, has not seen them, and has been facing criminal charges in a foreign country.

Additionally, a defendant's post-incarceration conduct should be heavily weighted in assessing deterrence, protection of the public, and rehabilitation under 18 USC § 3553(a)(2)(B)-(D). *See Pepper v. United States*, 131 S. Ct. 1229, 1242 (2011) *quoting United States v. McMannus*, 496 F.2d 846, 853 (8th Cir. 2007). In this case, Mr. Betancurt has been incarcerated since his arrest. He has not had any infractions since his arrest.

Mr. Betancurt's incarceration for 1 year and 1 day (the proposed sentence), in addition to the fact that he is facing prosecution in a foreign country more that is approximately 2,500 miles from his home and family, will provide ample deterrence to Mr. Betancurt.

### (C) To protect the public from further crimes of the defendant.

Mr. Betancurt has no criminal history; certainly, none in the United States. There is no evidence that he will be a recidivist. Based on the information contained above, it is urged that the Court find that a sentence of 1 year and 1 day incarceration adequate to protect the public from further crimes of the defendant.

### IV.

### CONCLUSION

As set forth in the discussion above, we request that Mr. Betancurt be sentenced to 1 year and 1 day incarceration. In this case, such a sentence is "sufficient, but not greater than necessary" to satisfy the purposes of sentencing under § 3553(a).

Additionally, for any sentence that is imposed upon Mr. Betancurt, we ask that he be credited for the entire time he has been in custody, starting from when he was taken into custody by the United States Coast Guard.

On behalf of Mr. Betancurt, I thank the Court for taking the time to consider our sentencing submission. We look forward to addressing the Court during the sentencing hearing.


Dated:          New York, NY
                February 21, 2017

Yours, etc.,

BRYAN KONOSKI (BK7563)
Treyvus & Konoski, P.C.
*Attorney(s) for the Defendant*
305 Broadway, 14th Floor
New York, NY 10007
(212) 897-5832

# EXHIBIT A

Roof



WALL

WALL

↑
Shirt
hanging

↑
Light

Wife and Children



Pg 1



Wife and son



Hallway inside the home

Pg 2





wife and son inside Home — Living & Sleeping conditions

Pg 3

Roof



WALL

WALL

↑
Shirt
hanging

↑
Light



Kitchen

Pg 4



Hallway inside the home



Kitchen



Hallway  Inside Home



Ground outside home

Francisco
Quinones Betancurt



Outside the home



197